### T. A. Kilgore et al. v. H. H. Jackson et al.

Decided April 7, 1909.

**1.—Election—Removal of County Seat—Designation of Center of County—Definition of "Near".**

An election to remove the county seat to a point within five miles of the geographical center of the county was not void because the certificate of the Commissioner of the General Land Office designated the center "to be a point within the boundaries of R. O. W. McManus 320-acre survey, near the center of said survey." The word "near," meaning "adjacent to, close by, not far from," is a relative term; and a point which would, in the ordinary meaning of the term, be "near" the center of the relatively small space of the designated survey would be sufficiently definite as a designation of the center of the county. Constitution, art. 9, sec. 2; Rev. Stats. art. 813.

**2.—Same—Declaration of Result—Jurisdiction of County Judge.**

In an election to remove the county seat from a place without to a place within five miles of the center of the county, the order for the election and the counting of the votes were the facts giving the county judge jurisdiction, and his jurisdiction to declare the result in favor of removal did not depend upon the existence of the fact that the place receiving a majority vote was within five miles of the center of the county, or other facts necessary to a proper decision.

**3.—Same.**

A finding by the county judge, upon a majority vote in favor of removal, that the result was in favor of the removal, and his judicial declaration of this fact, necessarily included a finding of the fact that the place to which it was sought to remove the county seat by election was within five miles of the center of the county. His declaration of the result necessarily involved also a declaration of the existence of the facts upon which the correctness of his order depended.

**4.—Same—Burden of Proof—Center of County.**

The finding of the county judge that the place to which it was sought to remove the county seat was within five miles of the center of the county,

while it might not be conclusive upon taxpayers seeking to prevent the removal, was sufficient to throw upon them the burden of showing that the facts did not exist which authorized the removal upon a majority vote.

**5.—Evidence—Territory of County—Navigable Waters—Bays—Center of County.**

The law makes no provision for excluding from consideration, in determining the geographical center of the county for the purpose of an election to remove the county seat, that part of the territory covered by waters, navigable or otherwise, of the bays which are within such territory according to the boundaries of the county as fixed by the Legislature; and in a suit to prevent the removal of the county seat in accordance with the result of an election as declared by the county judge, evidence that excluding the territory covered by such waters, the successful place was not within five miles of the center of the county, was properly excluded.

**6.—Center of County—Certificate of Commissioner.**

It seems that under the provisions of the Constitution and the statute the certificate of the Commissioner of the General Land Office, designating the geographical center of the county for the purposes of an election to remove a county seat, is conclusive.

**7.—Injunction—Taxpayers—Creation of County Debt.**

Injunction will lie at the suit of taxpayers of the county to prevent the county commissioners from ordering an election to submit to the qualified voters of the county the question of the issuance of bonds for the erection of a courthouse and jail at a place to which the county judge has declared the county seat was removed by election, if such expenses are about to be unlawfully incurred by reason of void proceedings resulting in such removal.

**8.—Same—Res Judicata—Contest of Election.**

A judgment in favor of the contestees in a contest of an election to remove a county seat, the contest being upon the grounds, among others, that the geographical center of the county had not been properly designated and that the place to which the county judge had declared the county seat to be removed by a majority vote, was not within five miles of such center, could not, it seems, be urged in bar of a subsequent proceeding in equity by other parties as taxpayers to enjoin the county commissioners from creating a debt to raise funds to build a courthouse and jail at such place on the ground that the proceedings resulting in the order for removal were void for the reasons urged in the contest.

**9.—Contest—Election to Remove County Seat.**

In a contest of an election to remove the county seat nothing, it seems, can be inquired into except what occurs on the day of election, that is, the act of casting and receiving the ballots from the voters, counting the ballots and making returns thereof.

**10.—Town—Addition—Removal of County Seat.**

Where the election to remove a county seat resulted in favor of the town of Anahuac, and the undisputed facts were that an addition to the town was a part of what had been known as the town for many years, and that the post-office, school, boat landing, business houses and what may be called the town has always been located on the addition, it was clear that the voters intended the removal to be to the addition and that the commissioners had the right to place the courthouse and jail there.

Appeal from the District Court of Chambers County. Tried below before Hon. L. B. Hightower.

*Stevens & Pickett* and *J. R. Davis*, for appellants.—Before a county seat can be removed to any place on any vote it is necessary for the Land Commissioner to designate the geographical center of

the county, and such designation being a condition precedent on which the validity of the election depends, no removal can be lawfully declared if the only designation made is by a certificate of the Land Commissioner that he has, "from the maps, surveys and other data on file in his office," designated the center to be at a point within the boundaries of a certain tract of land and "near" the center thereof. Constitution of Texas, art. 9, sec. 2; art. 813, Rev. Stats., 1895; Kerr v. Corsicana, 35 S. W., 696; Andrey v. Dallas, 35 S. W., 727; Dallas v. Ellison, 30 S. W., 1128; Friedenwald v. Shipley, 74 Md., 220; Erie v. Brady, 150 Pa. St., 462.

On the uncertainty and insufficiency of the word "near" see the following authorities: Manis v. State, 3 Heisk. (Tenn.), 315; Parke's App., 64 Pa. St., 137; Shaw v. Davis, 7 Mich. 318; Ind. R. R. Co. v. Newsom, 54 Ind., 125; Sonnek v. Minnesota, 50 Minn., 558; Ward v. Wilmington Ry., 109 N. C., 363; Kirkbride v. Lafayette County, 108 U. S., 208; Boston v. Midland, 67 Mass., 340; Grescom v. Gilmore, 16 N. J., 105; McDonald v. Wilson, 59 Ind., 54; Blodgett v. Commissioners, 11 N. W., 275.

A county judge (or county commissioners) who orders an election on the question of removing the county seat, and who declares the result thereof, acts, in making such orders, in all respects as a court of limited jurisdiction, and therefore if it does not appear from said orders or from the face of the whole record that a fact absolutely necessary to furnish jurisdiction was found to exist by the county judge (or county commissioners), the orders so made are a total nullity, and acts performed thereunder are wholly void; and presumptions to supply the deficiency are not allowed in support of such orders, but evidence to show that such fact did not in truth exist, is admissible in behalf of the party assailing the validity of the removal of the county seat. Horan v. Wahrenberger, 9 Texas, 319; Withers v. Patterson, 27 Texas, 496; Mitchell v. Runkle, 25 Texas Sup., 137; Williams v. Ball, 52 Texas, 607; Holmes v. Buckner, 67 Texas, 109; Clayton v. Hurt, 88 Texas, 598; Lindsey v. Luckett, 20 Texas, 520; Glassgow v. McKinnon, 79 Texas, 117; Fowler v. Simpson, 79 Texas, 617; Bohl v. Brown, 2 Texas App. C. C., 538; Anderson v. Lockhart, 2 Posey's U. C., 70; Thatcher v. Powell, 6 Wheat. (U. S.), 119; Harvey v. Tyler, 2 Wall. (U. S.), 342; Galpin v. Page, 18 Wall. (U. S.), 350; Walker v. Turner, 9 Wheat. (U. S.), 541.

Galveston Bay, including that part thereof sometimes known as Trinity Bay, being a navigable body of water, is within the admiralty and maritime jurisdiction of the United States Government, and under such power Congress can take exclusive jurisdiction of all matters and actions arising thereon, both civil and criminal, and consequently that part of said bay which the boundaries of Chambers County, as given in the State statutes, attempt to include within the borders of said county, is not subject to the exclusive jurisdiction of the State of Texas or of said county, as is all land within its borders, and should not be considered as a part of the territory of the county for the purpose of including it in a calculation to determine the geographical center of the county as a fact preliminary to the removal of the county seat thereof. And when correctly located, according

to such calculation, the said center is more than five miles distant from the town of Anahuac proper, and from all the inhabited parts of both the original town of Anahuac, as platted, and the Wilcox Addition thereto.

On what are navigable waters: Jones v. Johnson, 25 S. W., 651; Miller v. N. Y., 109 U. S., 385; United States v. Montello, 11 Wall., 411.

As to what is within the admiralty and maritime jurisdiction of U. S.: Article 3, sec. 2, U. S. Const.; United States v. Bevans, 3 Wheat., 383; United States v. Rodgers, 150 U. S., 283; The Genesee Chief Case, 53 U. S., 443; Waring v. Clarke, 5 How., 449; United States v. Wiltberger, 5 Wheat., 104; Jackson v. Magnolia, 20 How., 296; United States v. Peterson, 64 Fed., 146; Ex parte Byers, 32 Fed., 406; United States v. Grush, 5 Mason, 290; Fed. Cas. No. 15268; Manchester v. Massachusetts, 139 U. S., 240.

As to Federal Courts having admiralty and maritime jurisdiction: Glass v. Betsey, 3 Dall., 6; sec. 563 (sub. 1st and 8th), U. S. Stat.

A county seat can not be removed to a place not within five miles of the center of the county if it had received less than two-thirds of the votes cast, and although the county judge has declared the result in favor of such place, and removal of county seat thereto has been ordered by the Commissioners' Court, the result so declared is void and the attempted removal illegal, and proof is admissible to show that such place is more than five miles distant from the center of the county. State v. Alcorn, 78 Texas, 396; Caruthers v. State, 67 Texas, 134; Presidio County v. Jeff Davis County, 13 Texas Civ. App., 117.

*A. D. Lipscomb,* for appellees.

REESE, ASSOCIATE JUSTICE.—In this case T. A. Kilgore and a number of other plaintiffs, property taxpayers of Chambers County, seek to enjoin the defendants, who are the county judge and four county commissioners of said county, from ordering an election to submit to the qualified voters of the county the question of the issuance of bonds for the erection of a courthouse and jail, either in the town of Anahuac or in what is called the Wilcox Addition to said town, and from making any order whatsoever in regard to such bond issue. Plaintiffs also seek by mandatory writ to compel defendants to rescind their former order removing the county seat from Wallisville to Anahuac, and to return at once to Wallisville the public records, which had been removed to Anahuac, and to reestablish the county seat at the former place.

The suit is the aftermath of an election ordered and held in 1907 to determine whether the county seat of Chambers County should be removed from Wallisville, where it had been located for more than forty years, to the town of Anahuac. At that election a majority of the votes cast—but not two-thirds—were in favor of the removal, and the result was accordingly so declared. There was a statutory contest of the election upon the grounds, among others, that the geographical center of the county had not been properly designated, and that Anahuac was not shown to be and was not in fact within five

miles of the geographical center of the county, which was necessary to authorize the removal by a majority vote. The contest was decided against contestants and upon appeal to this court the judgment was affirmed. (Wallis v. Williams, 50 Texas Civ. App., 623.)

In the present case it is alleged that the proceedings and the order of removal were void on the grounds, first, that the Land Commissioner did not, before the election was held and declared or at any time, designate the geographical center of the county in the manner provided by statute, and which, it is alleged, was a condition precedent to such election and removal; second, that at no time was any evidence offered before the county judge or the Commissioners' Court in regard to the location of the geographical center of the county, or the distance of Wallisville or Anahuac therefrom, and no determination of this question was ever made by the county judge or the Commissioners' Court; and third, that the town of Anahuac is, in fact, more than five miles from such geographical center, and less than two-thirds of said votes were for such removal.

Defendants answered by general denial, general and special demurrers, and pleaded specially the proceedings and judgment in the contest proceedings in bar of the action. Upon trial with a jury, after the evidence and argument had been heard, the court charged the jury to return a verdict for defendants, which was done. From the judgment plaintiffs appeal.

By their first assignment of error appellants bring in question the action of the court in instructing the jury to return a verdict for defendants, because, as set out in the assignment, the evidence offered and that erroneously excluded was sufficient to show that no valid election had been held, and that all acts of the county judge and Commissioners' Court in the premises were void. The first proposition under this assignment is based upon the alleged insufficiency of the certificate of the Commissioner of the General Land Office, designating the geographical center of the county as provided by article 9, section 2, of the Constitution, and article 813, Revised Statutes.

The certificate of the Commissioner, in proper form, designated the center of the county, "to be a point within the boundaries of the R. O. W. McManus 320-acre survey, near the center of said survey." The proposition turns upon the alleged indefiniteness of the designation as being *"near"* the center of the survey referred to, and it is insisted that this is not a sufficient compliance with the requirements of the law.

"Near" is defined by Webster to mean "adjacent to, close by, not far from." "It is a relative term and its precise import can only be determined by surrounding facts and circumstances." Barrett v. Schuyler County Court (44 Mo., 202). The Land Commissioner is required to designate the center of the county "from the maps, surveys and other data on file in his office." A moment's consideration of the sources from which he must get his information will suffice to show that it is not practically possible that the Commissioner should determine with absolute accuracy the precise location of this point. Some certain square inch of ground is in fact the geographical center of the county, but the location of this point would be practi-

cally impossible of determination. Some margin must be allowed, and it was the intention of the law should be allowed, on this account. Appellants do not contend otherwise. Now, we know that 320 acres is a piece of ground, if in a square form, approximately 1240 yards square. Whatever the form, relative to the area of the county it occupies a very small space. A point which would, in the ordinary meaning of the term, be "near" the center of this relatively small space, would, we think, be sufficiently definite for all practical purposes as a designation of the center of the county, taking into consideration the purpose for which the designation is made, and the means by which the Land Commissioner is required to determine the question. A more definite designation is not practicable.

The second proposition under this assignment is that appellants, as taxpayers, have the right to prosecute this action. We do not understand that this is questioned by appellees.

The second assignment of error complains of the refusal of the trial court to admit evidence offered by appellants to the effect that at no time prior to ordering the election or declaring the result, was any evidence offered before the county judge or Commissioners' Court in regard to the distance of Wallisville or Anahuac from the center of the county, and that it was never at any time determined that Anahuac was within five miles of the center of the county, or that Wallisville was more than five miles from such point. The election was ordered by the county judge and the returns made to him. He then counted the votes with the result that there appeared to have been cast for Anahuac 390 votes and for Wallisville 244 votes. After tabulating the votes with the above result, the order of the county judge adds: "Showing a majority in favor of removal to Anahuac of 146. And the result of said election is hereby declared against Wallisville and in favor of Anahuac."

The proposition is stated under this assignment that the county judge, in this matter, was acting as a court of limited jurisdiction, and that it not appearing from the face of the whole record that the fact was found to exist that Anahuac was within five miles of the geographical center, which was essential to the exercise of his jurisdiction, his order was an absolute nullity. This view has been pressed upon the court by counsel for appellants, both in oral argument and by printed brief, evidencing diligent and extensive research, but we do not think the proposition sound in the application sought to be made of it here. The unsoundness of appellants' contention lies in the fact that the jurisdiction, that is, the power to hear and determine the matter, does not depend upon the establishment or the existence of the fact as to the distances from Anahuac and Wallisville to the center of the county. Nor was it essential to the *jurisdiction* of the county judge to declare the result in favor of Anahuac that it should have been established that Anahuac was within five miles of the center. The order for the election and the counting of the votes were jurisdictional facts, and without these it might be said that the county judge was without jurisdiction to declare the result, but his *jurisdiction* to declare the result in favor of Anahuac did not depend

upon the existence of facts necessary to a proper decision of the question. If it were so, then the power to determine the existence or not of the fact would depend upon whether the fact existed. We can not undertake to review the numerous authorities cited by appellants in support of this view of the law, but an examination of many of them show that they are fundamentally inapplicable to the case here presented.

Appellants' second proposition is that before the county judge could have declared the result of the election in favor of Anahuac upon a majority vote, he must have determined that Anahuac was within five miles of the geographical center as designated by the Land Commissioner; that if he did not do so, his order was void, and the court erred in refusing to allow appellants to prove this fact by the testimony of the county judge. We think it is a sufficient reply to this that a finding by the county judge upon a majority vote in favor of Anahuac, that the result was in favor of Anahuac, and a judicial declaration of this fact, necessarily included a finding of the fact that Anahuac was within five miles of the center of the county. He had the power to determine this question, it was necessary that he should do so in order correctly to determine the result of the election, and having made the order which he could not have properly made unless the fact existed, he should not be heard to say that he made no determination of this fact. His declaration of the result necessarily involves also a declaration of the existence of the fact upon which the correctness of his order depended.

We do not hold that this finding, even if it had been specifically and affirmatively embodied in the order, was or would have been conclusive upon plaintiffs, but at least it was sufficient to throw upon them the burden of showing that the facts did not exist which authorized the removal upon a majority vote, and this they did not even attempt to do. No evidence was introduced or offered tending to show that Wallisville was, or that Anahuac was not, within five miles of the geographical center. Appellants' contention rests, not upon the nonexistence of the facts, but upon the alleged failure of the county judge to make inquiry and determine their existence and to embody in his order a specific finding as to those facts.

What we have said disposes of the second proposition under this assignment. Whether any evidence was heard by the county judge or not, the declaration of the result in favor of Anahuac necessarily involves a finding that the facts necessary to such result existed. We think it is of controlling significance that appellants did not attempt by evidence to contradict the existence of the facts necessary to authorize the removal on a majority vote, insofar as such result depended upon the distance of Wallisville or Anahuac from the center of the county as designated by the Land Commissioner.

Appellants offered testimony to show that, excluding all that part of Chambers County covered by the navigable waters of Trinity Bay, the center of the county was more than five miles from Anahuac, and also to show that, including this area, the center could not be located within the boundaries of the McManus survey. This evidence was

excluded upon objection of appellees, to which appellants excepted, and the ruling is complained of by the third assignment of error. As to the first question presented, we think it is sufficient to say that the law makes no provision for excluding from consideration, in determining the geographical center of the county, that part of the territory covered by waters, navigable or otherwise, of the bay which, according to the boundaries of the county as fixed by the Legislature, are within such territory. We doubt if it is possible for the Land Commissioner to determine from the maps, surveys and other data in his office, the area covered by such waters.

As to the second question, it seems to have been the intention of the provision of the Constitution and of the statute to make the certificate of the Land Commissioner conclusive as to the location of the geographical center. This seems to have been the view taken by the trial court in excluding the evidence offered to contradict his certificate, and in this, we think, there was no error.

This disposes also of the fourth and fifth assignments of error based upon the action of the court in excluding, upon objection of defendants, the certified copy of the official map of Chambers County, and the testimony of W. B. Gordon that Trinity (or Galveston) Bay is a body of navigable water over which shipping and commerce of various kinds is carried on.

Under the third, fourth and fifth assignments of error appellants urge the following proposition: "A county seat can not be removed to a place not within five miles of the center of the county if it has received less than two-thirds of the votes cast, and although the county judge has declared the result in favor of such place, and removal of county seat thereto has been ordered by the Commissioners' Court, the result so declared is void and the attempted removal illegal, and proof is admissible to show that such place is more than five miles distant from the center of the county."

We understand appellants' contention under this proposition to be, that they should have been allowed to show, first, where the center of the county is located, regardless of the certificate of the Land Commissioner; and second, that Anahuac is not within five miles of such point, and that if such facts are shown the order of the county judge must be held to be void. The meat of appellants' case seems to be embraced in this proposition. We do not think it sound. The most that can be said for appellants upon this point is, that they might have shown that Anahuac was not, in fact, within five miles of the point designated by the Land Commissioner as the geographical center of the county, that is, that the finding of the county judge, necessarily included in his declaration of the result, was not conclusive on this point; but this fact appellants did not attempt to prove.

We are not inclined to hold that the proceedings and judgment in the contest proceeding brought by parties other than plaintiffs in this case can be urged as a bar to the present proceeding. That was a special proceeding which could only be instituted by residents of the county. (Arts. 1804t, 1804u, Rev. Stats.) We are inclined also to think that the doctrine announced by the Supreme Court in Nor-

man v. Thompson, 96 Texas, 250, applies to a contest of an election for the location of a county seat. The contest in that case was of a local option election under a statute relating alone to such elections. After quoting the statute (art. 3397) the court says: "As used in the foregoing article, the term 'election' means the act of casting and receiving the ballots from the voters, counting the ballots and making returns thereof. (State v. Tucker, 54 Ala., 210.) That is the meaning of the word 'election' in ordinary usage, and it must be so construed; there being nothing in the law to suggest that the Legislature intended to use it in a different sense. On the contrary, wherever the word 'election' appears in the Acts of the Legislature upon this subject, it seems to have in view those things to be done on the day of the election, in contradistinction to the acts which are to be done preparatory to the election."

It would appear that the word "election," as used in the statute under which the contest of this county seat election was instituted, was used in the same sense, and if so, in such contest nothing could have been properly inquired into except what occurred on the day of election, and there could not properly have been adjudicated in that case the issues presented in the present case, which is an equitable action which can be prosecuted by any person affected in his property rights by the levy and collection of taxes for payment of the expenses alleged to be about to be unlawfully incurred by reason of the void proceedings resulting in the removal of the county seat. We think, however, that it is immaterial to the decision of this case whether or not appellants are bound by the judgment in the contested election case. If that proceeding had never been instituted, still they have failed to show any ground for declaring the order of removal void. It may be remarked here, however, that it was made one of the grounds of the contest that Anahuac was more than five miles from the geographical center of the county, which was decided against contestants. It was held by this court (Willis v. Williams, *supra*) that the burden of proof on this issue was upon contestants, but it was also held that the evidence submitted in that case was sufficient to establish that Anahuac was within five miles of the center.

The uncontradicted evidence shows that what is laid down on a plat, made out and recorded before the election was ordered or held, as the Wilcox Addition to the town Anahuac, is in fact a part of what has been known as the town of Anahuac for forty years or more. It is at this place, spoken of as Wilcox Addition, that the Commissioners' Court propose to erect the courthouse and jail. The uncontradicted evidence shows that the postoffice, school, boat landing, business houses, and, in fact, what may be called the town of Anahuac, has always been, and is now, located on what is now this Wilcox Addition, which has been known as "Anahuac." This testimony is undisputed and goes back to a period before the Civil War. It leaves no room for doubt or question that this is the place to which the voters intended that the courthouse should be removed. There is no merit in the seventh and eighth assignments of error raising the question of the right of the Commissioners to place the courthouse and jail on this "Wilcox Addition." None of the assignments of error or the various

propositions thereunder present any grounds for reversal, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.